DECISION AND JUDGMENT ENTRY
This matter is before the court on appeal from the Lucas County Court of Common Pleas wherein appellant was convicted of four counts of nonsupport of dependants, a violation of R.C. 2919.21. Appellant now appeals, setting forth the following assignments of error:
"First Assignment of Error
 "DEFENDANT-APPELLANT'S CONVICTION IS SUPPORTED BY INSUFFICIENT EVIDENCE AND IS THEREFORE A DENIAL OF DUE PROCESS.
"Second Assignment of Error
 "DEFENDANT-APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
"Third Assignment of Error
 "INSOFAR AS ANY ERROR COMPLAINED OF WAS NOT ADEQUATELY PRESERVED BELOW, DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL."
The facts giving rise to this appeal are as follows. On March 31, 1989, appellant, Kevin R. Lloyd, Sr., and Cynthia L. Vargas-Lloyd were married, and three children were born during that marriage. Vargas-Lloyd filed a domestic violence petition against appellant in March 1993, and was awarded temporary custody of the children. Appellant was ordered to pay $188.60 in child support per child, per month, effective March 31, 1993. The parties divorced on August 11, 1994, and appellant was ordered to pay $201.38 in child support, per child, per month, along with a court processing charge, for a total of $616.22 per month, effective June 17, 1994. Appellant's child support obligation imposed under the domestic violence case was terminated February 3, 1995, and he was ordered to pay child support arrears. According to court documents, appellant was confined at the Corrections Center of Northwest Ohio ("CCNO") from February 17, 1995 to February 20, 1995. Appellant was also confined at CCNO from December 13, 1996 to April 23, 1997, after being charged with domestic violence and convicted of assault against Vargas-Lloyd and her mother.
In July 1998, appellant was found to be in default of his remaining child support order, and thus in contempt of court, after Vargas-Lloyd filed a motion to show cause. The court reaffirmed appellant's previous child support order, and ordered appellant to pay an additional $93.33 per month beginning July 24, 1998, to be increased to $143.33 per month beginning October 2, 1998, to pay for child support arrearage. The magistrate's decision, file-stamped October 28, 1998, revealed that at that time appellant had a child support arrearage of $1,059.66 in the domestic violence case, and $16,494 in the domestic relations case.
Both the judgment entry of divorce and the default order contained language specifying that appellant was to make child support payments through the Lucas County Child Support Enforcement Agency ("LCSEA"), and any payments not made through LCSEA constituted gifts not in compliance with the support orders.
On January 27, 1999, appellant was indicted on three counts of recklessly failing to provide adequate support to his children in violation of R.C. 2919.21(A)(2), for the period between March 31, 1993 and June 30, 1996. Appellant was also indicted on one count of recklessly abandoning or failing to provide court-ordered support for his children in violation of R.C. 2919.21(B), for the period between July 1, 1996 and January 26, 1999. The indictment further alleged that appellant failed to provide adequate support for total, accumulated periods of twenty-six weeks out of one hundred four consecutive weeks, thereby making the first three counts fourth degree felonies, pursuant to R.C. 2919.21(E) (prior to July, 1996), and the last count a fifth degree felony, pursuant to R.C. 2919.21(G)(1) (after July 1, 1996).
During his bench trial, appellant stated he could not meet his child support obligation primarily due to the sporadic nature of his job as an operating engineer journeyman and union member. Appellant testified that the union assigned him jobs lasting from a couple of hours to a couple of years. He said that his annual pay range was approximately $16,000 to $50,000, depending on the amount of work the union gave him. Appellant testified that other reasons he could not fully meet his child support obligation were his lack of income during periods of incarceration, and his lowered income when he was collecting unemployment compensation.
On cross-examination, appellant admitted that the court had based his child support payment amounts on the annual figure of approximately $16,000 and $7,000 unemployment, and that the court had taken into account the fact that appellant had a fourth child to support aside from his obligation to Vargas-Lloyd. During cross-examination, appellant also testified that child support was not always taken out of his paychecks, especially if the job lasted a week or less, and when this happened he did not notify LCSEA of his employment. Appellant went on to testify that he did not notify LCSEA when he began working for George Gradel, a position he held from May 27, 1997 to August 1, 1997, according to court records. Appellant testified that he was fired from Gradel after getting into an argument with one of the secretaries after Gradel took "too much child support" out of appellant's pay.
Appellant testified that he did not own any of his own heavy equipment, and could not work "side jobs" in his field. Appellant further testified that he had not secured employment outside of his field, but stated he had made some direct payments to Vargas-Lloyd.
Vargas-Lloyd testified that the only child support payments she had received came from LCSEA after she would contact the agency with information regarding where appellant was working. The state introduced documentary evidence, by stipulation, which established appellant's history as to his child support orders and payments. This evidence showed that appellant had missed the following weeks of child support based on both the legal separation and the divorce orders:
YEAR WEEKS OF CHILD SUPPORT DUE WEEKS MISSED
1993 39.29 11.56
1994 41.01 30.12
1995 52.29 2.52
1996 52.29 17.61
1997 52.14 42.90
1998 52.00 40.61
1999 3.72 3.15
In addition, the state offered the testimony of Sandra Sniegowski, custodian of the records for LCSEA, who explained the method in which LCSEA calculates child support payments.
On August 3, 1999, the trial court found appellant guilty on all four counts of the indictment, and sentenced him to twelve-month terms for each of the first three counts, to be served concurrently, and eight months for the fourth count, to be served consecutively.
In his first and second assignments of error, appellant contends that his conviction is against the sufficiency of the evidence, and the manifest weight of the evidence. The Ohio Supreme Court has ruled that "the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." State v. Thompkins (1997), 78 Ohio St.3d 380,386. However, appellant puts forth essentially the same argument for both of these assignments of error, so we will discuss them together.
"`Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins (1997),78 Ohio St.3d 380, 386, citing Black's Law Dictionary (6 Ed. 1990) 1433. A determination as to "whether the evidence is legally sufficient to sustain a verdict is a question of law."Thompkins, supra, at 386. The relevant inquiry on review of the sufficiency of the evidence is, "whether, after viewing the evidence in the light most favorable to the prosecution, any
rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia (1979),443 U.S. 307, 319. A reversal based on insufficient evidence has the same effect as a not guilty verdict (and thus precludes retrial) because such a determination "means that no rational factfinder could have voted to convict the defendant." Tibbs v.Florida (1982), 457 U.S. 31, 41.
Weight of the evidence indicates that the greater amount of credible evidence supports one side of an issue more than the other. Thompkins, supra at 387, quoting Black's Law Dictionary,supra at 1594. Under a manifest weight standard, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of the witnesses. Only if we conclude that the trier of fact clearly lost its way in resolving conflicts in evidence and created a manifest miscarriage of justice will we reverse the conviction and order a new trial. Thompkins at 387.
Appellant argues that his failure to be in full compliance with the child support orders does not prove he was guilty of criminal nonsupport because the state did not prove beyond a reasonable doubt that appellant was able to work a different job or change his union hall, or was intentionally underemployed.
R.C. 2919.21(A)(2) states, in pertinent part:
 "(A) No person shall abandon, or fail to provide adequate support to:
"(2) The person's child who is under age eighteen * * *"
R.C. 2919.21(D) provides:
 "It is an affirmative defense to a charge of failure to provide adequate support under division (A) of this section * * * that the accused was unable to provide adequate support or the established support but did provide the support that was within the accused's ability and means."
This court has dealt with this affirmative defense before, and found:
 "In asserting the affirmative defense the accused has the burden of going forward and must prove by a preponderance of the evidence that: (1) he is unable to provide adequate support; and (2) he did provide such support as was within his ability and means. State v. Brown (1982), 5 Ohio App.3d 220, 451 N.E.2d 1232; see R.C. 2901.05(A). In proving the affirmative defense a lack of means cannot excuse a lack of effort on the part of the accused. Brown, supra, at 222."
State v. Wheat (Oct. 15, 1993), Wood App. No. 92WD090, unreported.
As set forth above, the state presented documentary evidence, as well as the testimony of the LCSEA record keeper, which showed that appellant did not pay his child support for twenty-six weeks out of one hundred four consecutive weeks between March 31, 1993 and June 30, 1996, and between July 1, 1996 and January 26, 1999. Although appellant argues against the manner in which LCSEA credited his payments, the fact remains that appellant fell far short of his child support obligation during the time periods in question.
Furthermore, appellant's own admissions during trial established that his child support payments were calculated using the lowest end of his salary range, and that he did not notify LCSEA of jobs he worked lasting less than a week, or of his job at Gradel. Based on all of the evidence and testimony, we conclude that viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found appellant guilty beyond a reasonable doubt. Moreover, there is nothing from the record which compels this court to conclude that the lower court lost its way and created such a manifest miscarriage of justice that it would require a new trial. Accordingly, appellant's first and second assignments of error are found not well-taken.
This court notes that conflicting testimony was presented regarding whether or not appellant lived with Vargas-Lloyd for a period of time, and whether or not appellant ever made direct payments to Vargas-Lloyd. There was also conflicting testimony regarding unemployment checks cashed by Vargas-Lloyd while appellant was incarcerated. However, any money appellant may have given directly to Vargas-Lloyd constitutes a gift, and as such, would not have been in compliance with appellant's support orders. Furthermore, even if appellant's testimony regarding these issues was to be believed over the testimony of Vargas-Lloyd and that of her witnesses, this court finds that ample evidence still existed to convict appellant.
In his third assignment of error, appellant asserts ineffective assistance of counsel. However, in his brief, appellant did not set forth an argument concerning this issue. Appellant mentions counsel's failure to preserve error, but does not point to any specific error. App.R. 12(A)(2) provides that this court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based. Accordingly, appellant's third assignment of error is found not well-taken.
The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal.
Peter M. Handwork, J., James R. Sherck, J., George M. Glasser, J., CONCUR.
Judge George M. Glasser, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.